The case for argument this afternoon is docket number 9-1372, Akamai Technologies v. Limelight. Mr. Waxman, you may be ready. Thank you, Chief Judge, and may it please the Court. This case is in an unusual posture. Our position, as we explained to this Court on Bank and to the Supreme Court, is that there is no basis in the statute or common law for a single-entity rule that permits two parties to divide up a patent method with impunity except where one either directs or controls the other. But, of course, we recognize that that argument has to await another day because this panel is confined by munioction and BMC and its other precedents in the divided infringement area. So would your theory in a clean slate world where BMC and munioction not exist be that all of the sort of standard common law joint tort fees or principles would be drawn into an analysis under 271A? It would. What about knowledge? I mean, the problem is you're going to pick and choose from them, right? You're going to allow some to be drawn in and not others. We want them all to be drawn in, construed as they were under the common law. And before I explain that, let me just say that even if we were constrained to one form of attributed liability, that is, liability that flows from direction or control, we think that the evidence in this, that those terms, particularly the term direction, Okay, now you're not at all answering my question. Okay, I'm sorry. Maybe I didn't. Right. My question is clean slate. Don't worry about the words direction or control. What I want to know from you is on a clean slate scenario, how are you going to pull in the joint tort fees or principles to A in light of the fact that patent law allows for a strict liability form of infringement and joint tort fees or principles require knowledge and intent or at least knowledge if not intent? You are right. I did not understand. I didn't understand your question and I now do. Thanks. The joint, at common law, the joint tort fees or attribution principles, all of which require knowledge, that is, not knowledge that a tort was being committed, but knowledge that the other party was committing, was engaging in the other steps that together. But see, that's not exactly right. Because Prosser, which you cited to us, has knowledge of the damage that would be caused. You can only know there's damage if you know someone has a patent and you can't be doing it, right? Because otherwise performing a method doesn't cause damage in the abstract. It's a damage by virtue of it causing a tort. So many of the restatement, Prosser, many of the very treatises and texts you sent to us and quoted to us, in fact, even the quote is in your letter brief that talks about knowledge of the damage from Prosser. Yes, Your Honor. It's not just knowledge of the acts. It's knowledge of the acts and the fact that committing those acts would cause damage. So there is a very great difference at common law between knowledge that damage will, that some harm will follow from something that I do or that you and I together do, and knowledge that the law, in fact, prohibits that. There are lots of things that you could do to me that would harm me or harm my feelings or harm my prospective employment that are entirely lawful. Well, Mr. Waxman, I doubt there's very much I could do to hurt you. No, I have a soft interior. But the point is this, Judge Moore. There are many torts. Infringement, which is a strict liability tort, is not alone in the world of strict liability torts. Nuisance, product liability, trespass. There are lots and lots of torts that at common law had strict liability. The attribution rule applied only where you had knowledge that the party combining with you or performing the other acts that together caused a legally actionable harm was the knowledge requirement necessary to attribute to you my acts. That is, to make you responsible for my acts. You had to know what I was doing. So under this theory, am I right to say that only the mastermind, the person who has knowledge of the patent and the fact that he, in conjunction with maybe a customer or an end user or something, when all these steps are going to perform, are going to infringe someone's patent, that that is the level of knowledge that must exist in order for infringement to exist in the joint tort-feasor context? In the joint tort-feasor context, the knowledge that a defendant must have to be liable for his own conduct in conjunction with the conduct of others is that the other is in fact committing the acts that are requisite to in fact establish a tort. So for example, let's take... So you have to have knowledge that your act in combination with someone else's is going to establish a tort, so you have to have knowledge of the patent and that the acts in combination could cause infringement. You have to have knowledge, and the cases at common law were clear, that you have to have knowledge that if the following steps are committed, whether it's a trespass or a nuisance or a product... If the following things are done, harm will occur. You don't have to know that the law prohibits that. But how can performing any method, assuming it's not a method that is innately harmful, how could absent knowledge of someone else's property right with regard to the method, absent knowledge of someone else's patent, how could you ever have knowledge? I'm not understanding if you're trying to artfully avoid answering my question or if there's a difference between what we're trying to talk about. Do you have to have knowledge of the patent in order for you to be liable? No. Well, then how do you have knowledge of a tort? Because performing a method does not innately cause a tort. It only causes a tort by virtue of the fact that it would infringe on someone else's property right. Right. So let's just forget the divided infringement context. Let's just take a single party as infringing. You don't have to show... You are liable only if you know you are doing all of the requisite steps. You don't have to know that the requisite steps are claimed by a valid patent. And the same is true when some of the steps are performed by someone that you were either in concerted action with or whom you are directing. So you only want them to have to have knowledge of the other person performing the step. Correct. But how does that... I don't see how that comports with the treatises that you submitted to us which are reflective of the common law state of joint tortfeasor principles because they don't just say knowledge of the acts. Every one of those treatises goes further and says knowledge of the acts when taken in concert cause damage. And that's the problem that I'm having with reconciling the argument because knowledge of the acts isn't knowledge of damage. Only when you know someone else has a property right do you have knowledge that you're going to cause harm when you commit those acts. Okay. Well, I'm certainly not trying to artfully evade anything that you're asking me. I don't think I can give a better answer. Since we're dealing in the clean slate world, my answer would be that I read the common law precedents, whether it's the restatement or Prosser or Keaton or Robinson, to say that the acts of a third party were attributed to an accused tortfeasor when the accused tortfeasor knew of the steps that a third party was doing either in concert with the accused or at the direction or control of the accused or in a master-servant, principal-agent relationship with the accused, period. Not that it constituted or with the intent that it constitute a legal harm. Whether I'm right or wrong about that with respect, Judge Moore, I don't think would change the outcome of this case because the question in this particular case and here, if I may, with permission, just address myself to the attribution rules at common law that flowed from direction or control. But if I read the common law as establishing knowledge that your acts in concert will cause damage, then how do I find for you? Well, we have accused Limelight. Limelight certainly knows all of the steps that are being performed that coincide with the requisite system. If Limelight performed all four of the steps itself, it would have no defense by the fact that it didn't know that there was a valid patent that included those four steps. The question in this case is whether Limelight can be charged with responsibility for what it directed its content provider partners to do. I'm sorry, I see that I'm not answering your question, but I thought I was. No, because I feel like the common law quite clearly, Prosser says that you have to know it causes damage. It says it right in the section you cited to us. Did they know there was a valid patent that existed? Because that's what I understand the Prosser standard to require. Not that they knew that them in combination with their customers or end users would commit all of the steps, but did they also know that performing that combination of steps would cause damage? They don't have to know. In order to be liable for a tort, a strict liability tort, you don't have to know that, in fact, your conduct is tortious as a matter of law. You may have to know that it causes damage. In strict liability circumstances, I mean in a product liability case, you don't have to know that your product causes damages. If I trespass onto your action, I don't have to know your property. I don't have to know that it's your property. I have to know that I'm walking to this particular place. And the same is true for the strict liability tort of patent infringement. Can I just come out from another direction, and I'll just start a brief brief because your time is running out. But I appreciate that some argue that we've got to close the loophole and perceive there's a loophole in current law. But looking at it from another event, I'm looking at 271B, and I'm wondering if I'm going to write a claim now and the law has changed in the way that some are advocating, can't I just, in a method claim, if it was otherwise going to cover all the conduct of the customers, put in one step of the method that says, and someone provides a machine to that customer, or someone provides a process to that customer, and then you've evaded what would otherwise typically be an inducement 271B case. You've avoided that entirely because you've got it all in A now. And isn't that kind of arguably at least an unintended consequence of this and not the way the law has developed and people contemplate the law works? So I don't think so. And I think taking Muni Auction as correctly decided, as we have to for purposes of today, that is in fact what you had in Muni Auction. In Muni Auction, the defendant, Thompson, created a website. It was a third party. It didn't practice any of the method steps. It created a website. It said bidders and sellers can come to this website and use the process. And what it said to the bidders was, you can bid on a number you're willing to pay for these original issue bonds, either by sending your number in by fax, or when the screen comes up and says, how much do you want to pay, plug it in. And this court held that that doesn't constitute for common law attribution principles direction or control because the only step of the patented method was the submission of a number. And Thompson couldn't care less whether you submitted your number by fax, which didn't implicate the method, or in the computer system. And it didn't provide you any information at all about what you had to do. It was similar to if, in this case, the Limelight had said to its content provider customers, look, if you don't want to serve all the objects, just send them to us somehow. You can put them on a CD, you can email them to us, you can tag them, whatever you want, just send them to us, we'll take care of it. Under MuniAuction and BMC, that wouldn't be the requisite amount of direction. It was simply, we have a system, if you want to use it, send us something in the mail that tells us what you would like us to do. Mr. Waxman, I want to move you to something else. So what about B and C? I want to pick up on Judge Prost's question. And one of the things I'm struggling with is the notion of importing joint tortfeasor principles into 271A when it appears as though Congress very much was thinking about aiding and abetting and inducement and other sorts of concepts that are woven throughout joint tortfeasor principles. And they codify them, they codify them in B and C. And so I'm feeling a bit awkward about trying to pull common law into A when it seems like Congress actually was aware of it and pulled it into B and C in very precise fashion. So we know, I mean... How do I handle that? Well, there were plenty of instances prior to the 1952 Act in which the courts found joint tortfeasor liability in circumstances that didn't subsequently come to be codified as inducement or contributory. And the cases, I think, that we cited in our letter, Jackson v. Nagel and York v. Winans, are two good examples of that. There is no question that... in B and C the exact set of circumstances that intended to be covered for joint tortfeasor principles and to the exclusion of everything else. So I think the best I can give you is this. It is a dictate of the Supreme Court, and this Court has recognized that Congress is not presumed to derogate from common law principles unless it says so expressly. And 271A, the relevant terms are whoever makes, uses, sells, or offers to sell is, we know, sufficiently capacious to include the combined acts of two different parties because the very same language, for example, is used in whoever invents. And therefore, it's not as if I can, if I may just finish, I can point you to a statement where Congress said, And, oh, by the way, there's another category of joint tort liability, of direct liability, not induced or contributory liability, that also exists. And here it is. The relevant rules of construction are the words of 271A certainly include, and I don't think anybody disputes it, in some circumstances, the combined acts of two different parties. And there is a rule of construction that unless Congress expressly derogates, the common law rules continue. What about for apparatus? How is this new joint tort user concept, if it exists for methods in 271A, going to apply to apparatus claims? I don't think this situation ever comes up in an apparatus claim. There's a claim to a bicycle with a novel chain, but the claim is to the bike with two wheels, the seat, handlebars, and the chain. And I put together the bike for you, absent the chain, I hand it to you, you slap the chain on. Aren't we acting in concert to build the patented invention, to make the patented invention? Well, the patented invention in the case is a product. And I don't think this court has ever applied a rule for direct tort liability to anybody who makes the product, unless the product was in fact made by that party. And here, what we have. But aren't you advocating a rule that would suggest otherwise? I'm not advocating a rule that would suggest otherwise. The rule for making is, I mean, there could be attribution rules, I suppose, applied to that. But I don't think that. I guess cross medical was, now that I'm thinking about it, was an apparatus claim where one element of the apparatus was whatever the device was in contact with bone. And the question was whether Medtronic, I think it was Medtronic, was liable for the actions of the surgeons which were making the apparatus. I mean, normally in the context of apparatus claims, of course, whoever puts the chain on Judge Moore's hypothetical is a direct infringer. So you don't have the same situation. But of course, then whoever induces someone by selling components or parts, then you fall under 271B. And that implicates intent and knowledge and all of that. And my concern is that applying the principles, the common law principles you're advocating would suggest that maybe you don't need to show intent, even in a structural situation, an apparatus situation. If you sell components to somebody else who completes the device, then. Well, I think in cross medical, this court did allow for that possibility. Because if it had concluded that the Medtronic representative who was in the operating room was, in fact, quote, directing the surgeon what to do, that then there would be liability. And because that didn't happen, that was the basis on which this court in BMC distinguished cross. But I do think that if one, just going back to the method claim that we have here, even taking Muni Auction and BMC as binding law in this panel, which they are, the fact is that in this case, we're only asking you to decide this case. Unlike Limelight, unlike Muni Auction, Limelight doesn't merely instruct its customers that they can submit a bid of their choosing. It requires them to use a specific host name. And in fact, it gives them multiple host names to use and tells them in detail which one to use, depending on the type of object to be served. It tells them in great detail how to perform the tagging step in order to make Limelight's system work. And it helps them to do it every step of the way in order to make use of the patented process. And we think that under the meaning of direction, as it properly should be construed, consistent with the common law test, that constitutes direction. And if it doesn't, then just about any method claim could be performed by a pair of actors working together in a non-hierarchical way. And that would not have been sanctioned by the common law. And the fact that there is a lot of overlap in patent law between 271A liability and B. If we read Muni-Auction as saying it requires the direction or control test can only be satisfied by a vicarious liability, then you're lost. It has to be done by the inmate court. Well, I agree with you, Judge Moore, if by vicarious liability you mean that there has to be a formal legal relationship between the two. That is master-servant, a principal agent, a binding contractual obligation. I think that this court in BMC and otherwise used vicarious liability. Well, they didn't use the word vicarious liability in BMC. They only appear in Muni-Auction. I personally thought Muni-Auction was a substantially further narrowing of the BMC principle. Well, that is a way to read Muni-Auction. And if you think that, and that's, of course, the prior panel in this case, held that that's how Muni-Auction should be construed, that there had to either be an enforceable contractual obligation, or there had to be a formal agent-principal relationship. If that's the case, then you're right. We're off to the en banc court if it will agree to hear the case. But I'm suggesting that in Muni-Auction, where Muni-Auction says, and that's the last paragraph before the conclusion, under BMC resources, the control or direction test is satisfied in situations where the law would traditionally hold the direct accused or vicariously liable. What it was saying was one or both of two things. One, as Judge Rory wrote for the court in Travel Century, it was saying you could either, one way of establishing attribution is vicarious liability in the formal relationship sense. And another way of establishing vicarious liability is showing that there was sufficient direction or control such that the conduct of A is attributed to B. I mean, I actually think that you might be potentially right about what you're saying. And I might want to go that way. But what do I do with the Supreme Court's statement, assuming without deciding that the Federal Circuit's holding in Muni-Auction is correct, there has simply been no infringement of the method in which respondents have staked out an interest because performance of all the steps are not attributable to one person. So even if you and I have a particular impression of how we would limit Muni-Auction, and I'd love to hop in the boat with you and paddle out to sea on that impression. But how do I get around, what am I going to say, this is dicta along with the slams of the court that Alito gave later in the opinion? I mean, what am I going to do? How do I get around the fact that the Supreme Court characterized the holding that way? I hope that when we're paddling out, we're paddling not out to sea, but at least to some pond or something where we can reach the other shore. But I recognize that the court used that language. And if this panel concludes that the Supreme Court of the United States has held that under 271A, Muni-Auction absolutely dictates the result in this case, then not only this panel, but the en banc court is constrained. No, the en banc court is not constrained. The en banc court can just say Muni-Auction is not good law and change that. You're right. Let me suggest why I don't think that that's a fair reading of what the Supreme Court was doing. The Supreme Court said that the Supreme Court declined to consider our cross petition or what was Roman numeral one of our argument on Limelight's petition that you have to resolve the 271A issue. And they made clear in their opinion that the question presented, quote, clearly focused on B, not A. And that they said that their opinion, quote, presupposes that Limelight has not committed direct infringement under A. They then allowed as to the fact that the possibility. Your argument is even though that sentence may, in the abstract, appear clear on its face, they were accepting the proposed suggestion about what Muni-Auction actually does stand for. By the panel in this case. That's correct. And not actually rendering an independent judgment about what Muni-Auction actually stands for. That's right. I understand your argument. The oral argument in the Supreme Court was, and I think it's fair to say, 98% of the oral argument was about 271A and not 271B. But in the entire argument about 271A, there was never any discussion about what the Muni-Auction decision itself required. Muni-Auction was used throughout as essentially a substitute for the then vacated panel decision in this very case, which construed Muni-Auction in a particular way. A way that we suggested then and reprise now is inappropriately narrow. But I don't think that you need to or should read the Supreme Court as having rendered an opinion about the contours of the Muni-Auction 271A decision when it made very clear that it was not touching the Muni-Auction, the 271A question. OK. Thank you. We'll restore you three minutes. And we're way, way over time. So why don't we add 10 minutes to Mr. Panner's time if he needs it. Thank you, Chief Justice Prost. And may it please the Court, this Court should affirm the judgment of the District Court, which properly applied this Court's direct infringement precedents, and in particular, the decision in Muni-Auction, to find that Limelight does not carry out every step of the patented method either directly or vicariously. Muni-Auction states that the controller direction standard is satisfied, as Mr. Waxman has already read to you, in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method. Why should I interpret that language as saying it's only satisfied when there's vicarious liability, as opposed to just an affirmative statement that it can be satisfied. My hunger can be satisfied by eating a donut. My hunger can also be satisfied in other ways. Well, because, Your Honor, in that decision, what the Court, the preamble to that statement is a discussion of the fact that various factors that had been listed in the District Court's instruction were not relevant. And what did matter was whether there was controller direction exercised over the conduct of the customer by Thompson. And remember, that controller direction standard is not something that the Court made up in DMC. It was taken out of the restatement of agency. It's an agency law concept. And what the Court was very clearly alluding to in DMC, and again in Muni Auction, was the notion of the legal right to control the act of that third party, and that legal control as being the basis for conduct attribution. And as a preliminary matter in talking about it, I think there's common ground that for the Court today, the question is, what's the proper decision under the existing precedents? The conclusion that under DMC and Muni Auction, there was inadequate basis for imposition of liability on limelight was not just the conclusion of the District Court. It was the conclusion of the original panel, unanimous panel in this case. It was the conclusion of the en banc majority, and four of the five dissenting judges at the en banc stage originally. It was the conclusion of the unanimous Supreme Court. And one thing I want to stress. But what was the conclusion of the unanimous Supreme Court? The conclusion of the unanimous Supreme Court was if we accept your representation of what the holding of Muni Auction is, then. No, Your Honor. Akamai's representation. It was Akamai that said to the Supreme Court. I'm not going to hold them to some sort of admission against interest or something like that. You all both represented Muni Auction stood for the following principle. They represented it stood for an awful principle because they wanted the Supreme Court to see the sky is falling and do something different. You said it stood for an awful principle because you just wanted it to stand for an awful principle. So either way, you both argued the same thing to the Supreme Court. What does that matter if I don't think that's what Muni Auction actually stands for? Well, it matters for a couple of reasons, Your Honor. As an initial matter, it means that Akamai has waived the argument that BMC is wrongly decided by not raising it at the en banc court before. It also means, Your Honor, that because Akamai chose. Actually, first off, I think that they did argue that BMC was wrongly decided. I think that I saw throughout their argument mention that joint tort fees or principles ought to apply but that living under the world of BMC, they thought that BMC wasn't so bad. Direction or control could have a much broader scope than pure contract agency principle law through vicarious liability. If I just referred to BMC, I meant to refer to Muni Auction. I apologize for that. That was my confusion. But the reason why I think it matters is that the Supreme Court has stated, and I think that you aptly raised it in your prior questions, the Supreme Court has stated what it understands to be the law as this court has articulated it under its prior decisions. Where did it state that? It said it repeatedly in its opinion in the Limelight case. Not just once, but approximately three times. I have the slip opinion, so if you have the published opinion, then it may not be as easy to follow. But on the slip opinion on page 6, the court said, assuming without deciding... Can you tell me, are you under B or are you under A? I'm sorry, Your Honor, that I don't have the published opinion. It's 2A. The court stated, it's right in the middle of that section, assuming without deciding that the Federal Circus holding in Muni Auction is correct, there has simply been no infringement of the method in which respondents have staked out an interest because the performance of all the patent steps is not attributable to any one person. At the end of Section 2A, just before the beginning of Section 2B, drawing the analogy to Deep South, the Supreme Court said, similarly in this case, performance of all the claim steps cannot be attributed to a single person, so direct infringement never occurred. Shortly after in Section 2B, Muni Auction, which again we assume to be correct, instructs that a method patent is not directly infringed and the patentee's interest is thus not violated unless a single actor can be held responsible for the performance of all steps of the patent. Because Limelight did not undertake all steps of the 703 patent and cannot otherwise be held responsible for all those steps, respondents' rights have not been violated. And I would emphasize that in its briefing in the Supreme Court of the United States, Akamai said, the Federal Circuit has created an inflexible single entity rule under Section 271A whereby direct infringement requires a single party to perform every step of a claim method and arm's length cooperation will not give rise to direct infringement by any party, citing Muni Auction. And then subsequently... Okay, I understand your argument. Let's move on. Why ought not joint tortfeasor principles... Imagine we're operating on a clean slate. Why ought not joint tortfeasor principles apply to 271A, and why shouldn't the word whoever be interpreted in the plural? So this was the question that we spent some time talking about, it seems like a long time ago, when the en banc court heard argument in 2011. And I think that our full presentation in response to that issue is presented in those briefs. But the critical principle is that, and I think that Your Honor's questioning brought it out, direct infringement under Section 271A is a strict liability statutory tort. And the only basis of attribution of conduct is therefore strict vicarious liability. That is a circumstance in which the principal who is being charged with the conduct has the legal right to control the conduct of the third party. Why, if I can be guilty of patent infringement whether I know about the patent or not, why can't we be guilty of patent infringement if we act in concert, knowingly acting in concert to perform the steps, regardless of whether we know about the patent? Well, Your Honor, because the issue of what sort of joint tortfeasor liability ought to exist is addressed by Congress in Section 271B and C. And indeed, I think in the questioning of Mr. Waxman, and you brought out some of these very points, and I think that they are quite apt. The Supreme Court's decision in the Central Bank of Denver case really illustrates the fact that when Congress adopts a set of causes of action, a set of standards of liability, which include potential for joint liability as exists under Section 271B and Section 271C. I don't understand B as importing any sort of joint tortfeasor liability because B, it seems to me, allows for imposition of liability against a single actor who induces someone else to infringe, for example. I don't understand that to be joint tortfeasor liability. I understand that to be single tortfeasor liability. I think that if you look at the roots of the doctrines of contributory and induced infringement, where they precisely come from is, for example, Judge Taft's decision where he talks about the fact that we have joint tortfeasor principles. And so, therefore, someone who induces another to infringe should be held responsible for that conduct under a joint feasor concept. And that, it then gets, it develops under the common law of infringement before 1952, whereby certain types of conduct, culpable conduct, may be the basis for imposition of liability against one who has not himself or herself directly infringed the patent, not directly carried out each step, not directly made or implemented every element of the patent, but who contributed or induced another to do so in a way that was culpable and, therefore, can provide for an extension of liability to that party. That's precisely what joint tortfeasor doctrines do. And, indeed, in the situation of conspiracy or other circumstances where there are joint torts... You mentioned Justice Taft. What are you talking about? You said, when Taft... I'm sorry, Your Honor. I don't really know exactly what you're referring to, and I pinged my law clerk and he doesn't know either, so I have to stop you and ask. I apologize. I didn't mean to be so obscure, and it's because, of course, I forget the name of the case and he's now called me out. I believe that it is Thompson... But I will have it in a moment. The case... Thompson-Houston Electric v. Ohio Brass. Thank you very much. It's a Sixth Circuit case, then Judge Taft. Again, Mr. Waxman, thank you very much. In that case, Judge Taft explains that the basis for extension of liability... Direct infringement had always been understood to be that strict performance of every element because, for example, in this case, the elements of the patent are not new. It is not the elements that are patentable. It is the combination of elements, the entire method that's patentable. Therefore, in that case, there was the question, well, what do we do about a circumstance where someone seems to be knowingly evading a patent by doing everything but the last step? There was a basis there for finding that because the device was completed by the customer that there was a basis for imposition of liability. Section 271B and Section 271C deal with those circumstances where there's culpable conduct that could be a basis for liability. Here, we don't have that circumstance. We have a claim, and Akamai chose to pursue a claim solely under Section 271A. The question then becomes, has the defendant performed every step of the patent as it is written? What this court, I think, correctly found in BMC and in Muni Auction was that doesn't mean that it can only be a single person. It could be multiple people, but then there has to be a basis for attributing the conduct of that other party to the defendant. That basis for attribution, because of the nature of the direct infringement statutory tort, must be a legal right to control. Why? That's the part I don't understand. Because you make a product that the customers can only use in a certain way, and I don't want to debate the nature of the product or the technology, because just assume that I'm stating it accurately whether you agree with me or not. You make a product that customers can only use in a certain way, and when they do use it, their use will cause the completion of all of the method steps. You did the first six, they did the last one. Why? Say there's no other use for your product. Whether I'm right or wrong is irrelevant. Stick with me. Why can't you be held responsible for knowingly causing them to perform that last step? Because of the nature of the direct infringement tort is independent of knowledge, and I think that this court obviously held, and that court, I should say, held in an earlier phase. Don't tell me I can't do it because I'm bound by somebody else. I'm a clean slate. I want to know why. Why shouldn't you be held accountable and liable in that scenario? I guess the ambiguity in your question, the doctrinal answer I think is quite clear, and I've tried to lay that out again. It's laid out in great detail in our NBank briefing, and that is that because of the strict liability nature of the direct infringement under Section 271A, the only basis that would have been recognized in law for attribution of conduct is the legal right to control the actions of the third party. Why? What about 271A tells you that? I don't see anything in 271A that talks about legal rights to control parties. What tells me that in Section 271A is the nature of the tort, statutory tort, which is that it is a strict liability tort and does not depend on knowledge of the nature of the conduct or of the patent. It merely depends on performing all of the steps, and it depends on background principles of tort liability, which establish that when you are talking about extending liability for a strict liability tort, the only basis that is recognized in law is pure vicarious liability. But let me also say that there are important policy reasons. Yes, it is. There is no case that they have cited, of which I am aware, in which there is a circumstance where one was held liable for where there was no direct duty imposed on the liable party that was breached. And so it is simply circular to say, yes, if you say, well, you have a duty to avoid doing some steps in circumstances where another party might do other steps, you are simply assuming the conclusion. That has never been held under Section 271A. But if I was right in my analysis, if I were right about the technology, or you can take it as a hypothetical if you don't want to agree with it that this is accurate about this, you produce a product that has only one use. And when your customers use it in the way you absolutely intended and instruct them to use it, that completes the method. That is the final step of the method. Why is that a scenario in which there exists no basis for infringement? I have done the best that I can to try to provide the legal answer and let me try to provide a policy answer that I hope will help to address it to some extent. And that is that the value that is implicated here is the importance of having clarity in the drafting and enforcement of patents. These method claims are unequivocally clear. They were just of the belief when they drafted them that claims drafted this way were capable of being infringed by the combined acts of the respective actors. This isn't an indefiniteness or a lack of clarity in the claiming. Well, Your Honor, I don't know about that, but the one thing that I can say is that many of the claims that were written off this specification by Akamai's own account do not implicate any issue of joint infringement. But if Mr. Waxman is right, and I didn't see you cite anything to the contrary, that there existed some cases prior to the enactment of the 1952 Patent Act that would support the notion of a joint infringement theory. He cited, I think, two of them in his paper brief to us. So if those cases sort of represented, say, a common law concept, then why aren't these people writing the claims that they're writing on the backdrop of the belief that those claims are capable of being infringed? Sure. Your Honor, we obviously didn't have an opportunity to respond to the letter brief. Did you find any cases? You have an opportunity right now. Do you have a response to the letter brief in that regard? Sure, Your Honor. We responded to all of those cases in our NBank brief. And with respect to the case that they rely on most prominently, which is the Seventh Circuit case, and I'm showing my age because I can't remember the name of that one either. Because it was written before you were born? Is that what you mean? I'm very young, so they were all written before I was born. In all of them, the Seventh Circuit case, I think you know the one I mean. But the point was that the liability in that case was imposed as a matter of indirect infringement. And at that point, prior to 1952, indirect infringement was still a common law matter that was being developed in the courts. And the courts said, we think this is not okay and we're going to put it under contributory infringement. When Congress codified Section 271B and C, the bases for indirect liability were codified. And to the extent that an actor does not commit direct infringement, the basis for imposition of liability must fall under one of those. It does not here, and of course Akamai didn't make such a claim. And so, the fact of the matter is that there were a number of amicus briefs that were filed at the embanked stage, which made the point that it has been understood for a very long time that claims should be drafted, method claims should be drafted, so that they can be performed from the point of view of a single actor. And to the extent that these claims were not, that may be a problem with drafting, but this court has repeatedly noted that where there's a question as between the drafter who can make a decision about how to draft the claim... Where has it been well understood for a long time, the single entity rule that you're referring to? Because I've got to tell you, I think that if you're right, then it is going to implicate such a broad swath of claims that are going to be rendered incapable of being infringed, that I tend to think that the world of patent prosecutors was not aware of the fact that claims couldn't be drafted this way, because there's a gazillion claims actually drafted this way. Where is this well-established knowledge, according to you, that the single entity rule requires a claim to be drafted in a way that only one person can perform all of the steps? I think if you look at Cisco's brief at the en banc stage, if you look at Apple's brief at the en banc stage, there was also some discussion of this in our brief at the en banc stage. There was some discussion of this in the briefing in the Supreme Court. I'd be happy to send a letter to the court after argument to try to provide more specific references to that material. But I think the sky-is-falling concern, I think, is unwarranted. And we know that by the passage of time. Muni Auction was decided in 2008, and so it's been the law for six years. And I have not been made aware, and I think that if there were such a circumstance, it would have been brought to the attention of the court when the briefing occurred earlier this year. I'm not aware that there has been a flood of patents that have been held to be unenforceable as a result of the rule that was articulated in Muni Auction. And I think that that's an illustration of the fact that... They wouldn't be held to be unenforceable, would they? They'd be held to be not infringed. Not infringed. Fair. Good point. But, you know, I think that... You see many claims that are drafted where they involve interactive systems, and they are then drafted from the point of view of one perspective or another perspective, so that they can be enforced against the different parties to the transaction. And, again, going forward, the clarity of the rule that is established is very important to the inventive community. It's very important to people who are going to be drafting claims and who need to be able to design their conduct and conform their conduct to the law, because the rule that is articulated in Muni Auction, and that was applied by the panel earlier in this case, is one that does lend itself to some clarity and, at the same time, reaches those circumstances... It does not permit someone to perform a method by reaching out and hiring someone else to perform it on their behalf. Thank you, Your Honor. Thank you. Thank you, Your Honor. I just have, I guess, three points. One, Judge Bohr, to the extent that attribution principles require knowledge that the conduct constitutes a tort, the evidence in the record in this case did unequivocally show that Limelight knew about the 703 patent and the claims in the patent. That, hey, that evidence is not in the original joint appendix, but if it's relevant to the court, we can send a letter and provide the reference sites. Second of all, the fact that there is overlap... I know, but the problem isn't whether Limelight knew or didn't know. I assume they knew. At some point they knew, right? But the question is, do we want to import a knowledge requirement into 271A? That's the problem. If joint tort fees or principles in general require such a thing in order to extend liability to the actions of a third party or second party or whatever, do we want to import that concept into 271A, which is otherwise a strict liability proposition? Right. It would not be imported into 271A. 271A states a strict liability tort, just like product liability and nuisance and trespass. The knowledge requirement is imported into any action brought for violation of one of those strict liability torts if the accused tortfeasor is to be charged with not only his own conduct, but the conduct of someone else. It doesn't change the knowledge or intent requirement of the underlying tort. As to that point, in terms of what authorities there are or aren't, I mean, in our brief we weren't comprehensive, but if you look at page five of our letter brief and footnote one, we address the point that these attribution rules were readily and commonly applied in the infringement context and the non-infringement context in strict liability torts. That is just a background principle of attribution. It doesn't change the elements of the tort itself. Now, the argument that's made that, well, you're just saying that 271A construed the way we want, it's simply going to render irrelevant or create some huge overlap with 271B, my response to that is it is a commonplace in the patent law as it exists now and in tort law in general in the context of someone who is charged with a tort under a negligence in strict liability theory, somebody who is charged with unfair competition in count one and tortious interference in count two, and someone who is charged as, for example, was the case in the Global Tech case, which went from this court up to the Supreme Court. There, the defendant was accused under count one, 271A, count two, 271B. The jury was properly instructed. The jury found the defendant liable under both. Was there overlap? Yes. Is overlap a necessary concomitant of different theories of causes of action? Yes, but it's far better than the world that Limelight advocates in which there's a huge gaping hole in which, I mean, to advert back to the amicus briefs in this case, the bio brief and the brief filed by the American Bar Association in the Supreme Court, and I believe also in the en banc court, point out that pioneer patents in a number of different areas, and the bio brief points out that the pioneer patent that launched the field of biotechnology was a method patent that had more than one step. Was it drafted so that it required two different people, or was it drafted so that it didn't matter whether the steps were performed by one or two under the rule they advocated? If Mr. Panner and I get together and say, wow, this is a really cool pioneer invention, we really don't want to pay royalties to the patent holder, so why don't you do the odd-numbered steps, and I'll do the even-numbered steps, no liability. There is no, at common law, that would never have occurred, and there's no reason to think that Congress wanted it to occur here. Thank you. Thank you both.